We move on to our final argument for the day, 10 Bridges v. Midas Mulligan, LLC, case numbers 21-35,896 and 21-35,921. Good morning. May it please the Court, Phil Talmadge here representing 10 Bridges, LLC. Good to see you again, Counsel. Good to see you again, Your Honor. Indeed. And welcome to Seattle's real weather as opposed to what you've been experiencing over this last week. The District Court here erred in failing to dismiss the Washington Consumer Protection Act claim of 10 Bridges' competitor, Madrona Lisa, for a multiple of reasons. And the latest of which is the fact that the statute upon which the claim was based, the CPA claim was based, RCW 6329-350, has been repealed by the Washington State Legislature. But that repeal isn't effective yet. In fact, it is effective because, as the Kazaniki case indicates, it's to be applied retroactively. Right, but it doesn't come into effect. I mean, you know, it doesn't come into effect until January 1st. That's correct. At that point, it applies retroactively. I had a question about that, though, because my understanding was that even though it might apply retroactively, that doesn't necessarily mean it applies retroactively to a pending case. Kazaniki was, I think, dead on point on that issue, Your Honor. In fact, it did apply to pending cases and, in fact, applied to pending cases relating to claims that had arisen under the former law that would have made the contracts that were at issue in those claims illegal. And the Washington Supreme Court specifically said that in applying a statute retroactively. So the standard black-letter rule of law, which is a repealing statute, eliminates the existence of the cause of action unless there is something that indicates a savings clause or that there's a vested right at issue. See, I'd always thought that you still had to include, the black-letter law was, and maybe it's different in Washington, was that you had to indicate specifically that it applied to a pending case. Because otherwise, the legislature's, I mean, why isn't that an ex post facto law? Well, that's the whole issue that was raised in Hambleton, the case that they argued, relating to a case that I was involved in in the Washington Supreme Court that sort of blew a hole in the state's estate tax. But the fact of the matter is the Washington principle, and I think it's consistent with the black-letter rule, is that once you repeal the statutory basis for the cause of action, you take away all pending causes of action. Because you take at risk the possibility that the legislature may remove the possibility of you recovering under a statute if the legislature provides for a statutory cause of action. Counsel, we still left the fact that repeal is not effective until January 1st. Makes no difference. And that's why the issue in Kazanighi was this. You had a statute that had a specific effective date. And the constitutional principle in Washington is all laws are effective 90 days after the adjournment of the legislature, pursuant to a constitutional principle, unless the legislature directs otherwise. And the legislature may. In this case, it did. It provided for a statutory date. Right, but the legislature still hypothetically could act within the next two months to repeal this law, and then it wouldn't become effective. I mean, can you cite us to a case where a law has been applied retroactively before its effective date? Kazanighi. Kazanighi was applied in a set of circumstances where the contracts that were the predicate for the claims that were involved in the case. Right, but the law had become effective, I thought, in Kazanighi. I mean, I know we're having a debate. Yeah. The legislative date had already passed in Kazanighi. Well, the legislature adopted a standard that allowed for causes of action relating to retail installments, sales contracts, and interest rates. The effective date was such and such a date. There were a whole series of claims that arose out of – the repealing law had already gone into effect. By the time the court acted in Kazanighi, I believe it did. So that's the difference. Here, we're having to make a decision before the repeal effective date. Kazanighi does not control. But the Washington Supreme Court said the statute went into effect on a certain date. The trial court had basically ruled the way that you're talking about. It said it only applied to causes of action that arose after the enactment or the effective date of the statutory enactment. The Supreme Court of Washington said no, no, no, no, no. It applies to all causes of action, the ones that preexisted. I don't want to speak for Judge Sung, but that's not my concern. It's not about when the cause of action arose. It's about what is the law that exists at this moment that you're asking us to make a decision. And we're reviewing the district court, and certainly at the time the district court made a decision, the law, this repealing idea, hadn't come into effect. And at this moment, it hasn't come into effect. And so I suppose if we don't decide this case until after January 1st, then we're in a different position. But the issue is not about the cause of action and when it did or didn't arise. It's when did this repealing law come into effect and when do we have to apply it. And right now we don't because the legislature said it doesn't affect until January 1st. The Supreme Court and the Kazanighi case is on point. The Kazanighi court said, look, we're applying this statute that has been enacted by the legislature to activities that were illegal prior to. Right, and this statute will apply to things that were, you know, it will apply retroactively. But it won't apply retroactively until it's in effect. Well, the statute is in effect because it's been enacted by the legislature. The fact of the enactment by the legislature. I understand your argument. And so if we accept if we accept your argument, then Kazanighi is on point. But Kazanighi, it didn't have a future effective date. That's I think the question we're trying to drill down. I understand that. But I think the fact. Your point is it doesn't matter. It doesn't matter. The Supreme Court of Washington said apply it retroactively. It takes out the it takes out the enactment. So let me let me turn to the other reasons that we've really briefed in the principle briefs. And that is, does the good faith defense to a CPA cause of action apply to a per se claim? The answer to that question is yes. The district court erred in concluding otherwise. And the reason we say that is that here you have a situation where, you know, the clear cut rule is that you have this cause of you have this defense to a Washington CPA case. The Washington Supreme Court's recognized it in Perry. It recognized it in line gang. What council wants to argue is that somehow the the principle that we're talking about only applies in the insurance context. But he's oblivious to the fact that in Washington, the legislature conferred authority on the office of the insurance commissioner to adopt fair claims handling regulations. The court, the office of insurance commissioner did that. I don't understand the argument to be that it only applies in the insurance company. I understand it to be that it only applies in in cases that are not per se violation per se, deemed by the legislature to be per se unfair conduct and per se contrary to the public interest. He's he's arguing, in fact, that these cases that involve insurance that do clearly provide for this defense don't involve a per se violation of the Consumer Protection Act. My point is that they do. After the Calvary decision of the Supreme Court in line gang, if you violate a single claims handling regulation of the insurance commissioner of Washington, you have a per se CPA claim under Washington law. The Washington court in Mulcahy, just as one example, line gang did as well, applied the defense, the good faith defense to this per se claim that arises out of that insurance context. So, in fact, Washington law clearly applies the good faith defense to a per se claim. Now, he's attempted to also distinguish a case that this court decided, the James case, that involved the handling of mortgages and said, oh, it's not a per se case. We'll be submitting additional authorities later today that document the fact that that assertion is simply false, that, in fact, a violation of the FDCPA is a per se violation of the Washington Consumer Protection Act, and district courts have so held. It's a per se violation. The point I'm making here is state law arising in the insurance context and a multiplicity of federal court cases that we've cited to the court, Watkins, Bird, Satel, now James, all provide for the application of this defense to a per se CPA violation. What should we really do with the federal cases? Because this is a question of state law, and we're trying to figure out what the Washington Supreme Court would do if this question was teed up to them, and it doesn't seem to me from looking at the cases that it has been teed up to them directly, although you seem to think otherwise. Mulcahy, Your Honor. So it seems like the federal cases don't really come into play here. What do we do with those? Well, I think they're authority, Your Honor. I mean, we've provided an argument. But are they? I mean, a federal court sitting in diversity isn't really giving authority to state law. Well, I think they're persuasive authority, of course. I mean, the fact of the matter is we think there's clear-cut Washington law, as I've cited to the court, Leingang and Perry, nowhere say, not a word, not a syllable, that they differentiate between a per se claim and a non-per se claim. Leingang recognizes that the predicate for an insurance-based CPA claim is a per se violation of the Consumer Protection Act, and Mulcahy makes that clear as well. Then you have the Cox case that arises out of a violation of the Seed Act, a per se violation, good faith defense applies. All of that suggests to us in our argument that this is, in fact, a situation where the good faith defense applies in the context of a per se or non-per se claim under Washington law. And the question then is, did 10 Bridges have an arguable belief about the status of Washington law in this regard? It did. All of the case law that arisen under the statute prior to the Gwende case had indicated that it applied in the context of fees for tracer-type services for locating property. So you had no case law that said otherwise. Well, yeah, but I don't think that good faith means that you have to have a case law that specifically tells you that your action is unlawful. If you read the statute, it seems to me the reasonable inference is that 10 Bridges knew what they were doing was a little bit underhanded here. I don't think that's the case, Your Honor. But the district court didn't make a finding on that, right? No, it didn't. And for this reason, here's the reason it's not. Look at the language of the statute. The statute speaks in terms of fees for locating unclaimed property. Significant point. Look at the legislative history in 2010. The sponsor, the attorney general's office are all talking about what they were there doing. Look at the authorities that you have relating to the case. You addressed your client's conduct after the state court had already ruled that its contract was void because it violated the law. Your Honor, it was under appeal. I mean, if there was any question, if you're talking about Gwandai in specific, it was under appeal. Yes, but it didn't explain any of that. It wasn't candid with Ms. Asano regarding what had happened. Regarding when what happened, Your Honor? That the reason why the contract was voided and when it got the second quick claim deed from Ms. Asano. I mean, these would be factual disputes about whether your client was acting in good faith, which would be something that, assuming the good faith defense applies, would have to be resolved. Well, the district court here, in fact, found that the defense did not apply, so we didn't even get into this kind of conversation. Arguable belief about the status of the law? Yes, it had an arguable belief. The only thing that was contrary was one trial court commissioner ruling that was then subsequently appealed. Why should we reach that, though? I mean, the district court said that this defense doesn't apply. Even if we disagree and say, no, we think this defense does apply, why wouldn't we just remand it to the district court to figure out if the defense was established? I think that's perfectly appropriate, Your Honor. This was a situation where the defense was dismissed as a matter of law. There was no opportunity to present any of this because the court concluded that the defense didn't apply to a per se CPA violation. How do you explain, going back to what the Washington Supreme Court would do, how do you explain the court's footnote in Perry suggesting, at least footnote nine, that its good faith analysis would have been different if a per se violation had been established? It's a footnote, Your Honor. Well, we're still looking for evidence of how the Washington Supreme Court would have resolved the issue. That is suggestive, at the minimum, of how the Supreme Court would view it. And it's also, at least consistent with general principles of law, that when you talk about a per se violation, good faith or bad faith is irrelevant. Then you have a later case, Your Honor, in Leingang. Leingang's a case in which the court did not say that the defense was applied only to a non per se claim. And, in fact, in that case, the court specifically recognized that a violation of the insurance commissioner's regulations was a per se violation of the Consumer Protection Act. And it would have been a defense in that case but for the fact that it was a health care contractor who was at issue, a health care contractor who is not subject to those very same insurance commissioner regulations. So you have the later decision of the Washington Supreme Court in Leingang, which amplifies on the issue, wasn't dealing with it on a footnote, that basically said, in fact, that the defense would apply in a per se claim, but for the fact in that case it wasn't a per se violation. That's the difference, I think. And then you have Mulcahy. And in Mulcahy, the last of the three Washington Supreme Court cases that's appropriate, the court specifically recognized the existence of the good faith defense in a situation where it was an insurance-based claim. And, in fact, in that case, there was a violation of the insurance commissioner's claims handling regulations that was the predicate for the CPA violation, a per se violation. The court recognized that the good faith defense applied. To the extent that there is arguments on both sides then about how the Washington Supreme Court would resolve this issue, why shouldn't we certify it? Because nobody's asked the court to do that. Well, we don't need the request. It's a question of who is the appropriate, which is the appropriate court to resolve an issue of state law that is significant. I don't think it's a significant issue. I think the Mulcahy court made it 100% clear that the per se violation, the good faith defense applies in a per se violation situation, a case in which specifically in that case there was an allegation of a violation of a consumer, of the insurance commissioner claim handling regulations, a per se violation of the Consumer Protection Act. The Supreme Court is clear in that case. Let me turn to the CPA injury element. I don't reserve time for rebuttal. I do. Let me invade that for just a moment, if I could, Your Honor. And this is an important point. We have the CPA injury argument here. They've been injured, they allege. Let's not forget that in Gwandi, this very same party failed to seek a CPA claim. It failed to seek attorney fees, and the court in that case denied them attorney fees. So they were denied attorney fees as costs in the principal litigation, and now they turn around and ask the court to say, oh, those attorney fees that we didn't get in the Gwandi case are a violation of the Consumer Protection Act, and this constitutes an injury that gives us a shot at getting those fees that we didn't recover. The case law is very clear that in Demopolis and sign of life signs that if you have this underlying cause of action, if you're litigating that and you incur fees in it, those do not constitute injury for purposes of a CPA claim. And so we would urge the court to consider that in considering whether or not there was, in fact, a violation of the Consumer Protection Act here that was actionable. And lastly, with respect to the compulsory counterclaim issue, there is a wonderful irony is the only way I could describe it in counsel arguing to this court that we couldn't file a compulsory counterclaim asserting a Consumer Protection Act claim even though our sister corporation urged us to do it. We knew that there was possibly a violation many, many, many months ago because the law was unclear, and then they turn around and argue that the law is so clear that there's a violation, that there's not a good faith defense on the part of my client for saying that the good faith defense to a Consumer Protection Act applies. That's a marked inconsistency in position about which the court should be aware. For all those reasons, we ask the court to reverse the district court's decision here and dismiss the claims of Madrona Lisa that are baseless under the Washington Consumer Protection Act. Thank you. Thank you, counsel. Good morning, Your Honors. My name is Guy Beckett. I represent the appellees, Madrona Lisa, Midas Mulligan, Alex Toth, and Danielle Gore. As it turns out, we're only here for Madrona Lisa's claims against 10 Bridges as 10 Bridges has apparently abandoned its appeal of the dismissal of 10 Bridges' claims against my clients. Mr. Talmadge says he believes it's ironic that Madrona is engaged in the same type of analysis that it claims is improper in the briefing. First of all, I don't think it's an improper— Counsel, can you address your colleague's characterizations of Kazuniki and Mulcazy? Do you agree that those cases involve per se violations of the Consumer Protection Law? And if not, why not? I believe that Kalavig does involve a discussion of a per se violation of the Consumer Protection Act. I don't agree that it has the same basis for that allegation as in this case. In Kalavig, contrary to Mr. Talmadge's representations, the issue was not whether the insurer had violated an insurance regulation. Rather, the issue was whether the insurer had violated the duty of good faith in the adjustment of the insurance claim, which is—and I discussed this really briefly in the brief. Mr. Talmadge is repeatedly conflating the obligation for an insurer to exercise good faith in the adjustment of an insurance claim and to treat the insurer fairly. He's conflating that with the good faith defense to a per se violation of the CPA. When there's a violation of the duty of good faith between an insured and its insurer that constitutes bad faith, which is a per se violation of the CPA, it has nothing to do—it could. It could have something to do with regulations, but it doesn't have to. And in Kalavig, there were no regulations at issue that made what the insurer was doing a per se violation of the CPA. Instead, it was a situation where the insured failed—well, excuse me. I don't want to give you the wrong impression. The insured was the subject of a lawsuit—well, let me start over. In Kalavig, a restaurant burned, and the insureds made a claim for insurance benefits. And the insurer commenced a declaratory judgment that it had no obligation because the police had determined that the owners were the ones that had set the fire, and so they denied coverage. And then the owners sued for a violation of the obligation of good faith. And there was no claim in that case by the insurer that it was operating on a good faith interpretation under a reasonably arguable interpretation of law. It was just saying, he caused the fire, therefore we were justified in denying the claim, period. And Kalavig did make a claim that there was an insurance regulation that had been violated, clearly. I'm sorry to have said that earlier. But that wasn't the basis for the court's determination. The court's determination that the WCPA had been—well, as it applies here in this case, the issue was whether the violation of the regulation constituted bad faith and therefore a per se violation of the CPA under that basis. So it's a conflation. I want to say, first off, also, Mr. Talmadge did not cite that case in his opening brief. So I'm reviewing it and discussing it in terms of the reply. But it only applies to a denial of coverage constituting a breach of the duty of good faith and therefore it violated the WCPA. It didn't have anything to do with the good faith defense based upon an argument about an existing interpretation. The retroactivity, this law is going to be repealed, or the effective date of the repeal is January 1st. What happens on January 1st? Okay, well, there's a couple of things. I want to make sure that we're real clear. Mr. Talmadge said that it's a retroactive statute even though it takes prospective effect. But does nothing in the statute, first off, clearly it does not take effect until January 1. So in that regard, it's prospective. Now, Mr. Talmadge says, well, it's prospective, but it's retroactive. And you, Your Honor, said, I'm going to respond to this. But Mr. Talmadge said, well, once it's effective, it then becomes retroactive. That's not true. Statutes are presumed to be prospective only unless the legislature states that they're retroactive. Well, but Washington does have some case law that suggests that it would be retroactive when it's a repeal, when it's a repeal of a statute as opposed to adopting a new statute. I don't see that in the cases, Your Honor. I do not see that. What about Hamilton? Which says that a repeal is applied retroactively. What I've got here is that retroactive amendments may apply to cases pending on appeal. Sure. Retroactive amendments. This is not retroactive. And the reason you say it's not retroactive is because the legislature hasn't designated it. It doesn't designate it as retroactive. Now, Mr. Talmadge states that it is, and he looks to the, excuse me, he looks to the case involving. I would look to the Lau versus Nelson, I thought, which was the 1978 en banc case, which says, well, the general rule is that statutes are presumed to operate prospectively rather than retrospectively. So that's giving credence to what you're saying. Yes. As to repealing acts, the rule is different. As a general rule, such statutes terminate all rights dependent upon the repealed statute and all proceedings based upon it. That's Lau versus Nelson. That's where I think. But that's different than retroactivity. I mean, that's a repealing. Do you disagree that this is a repealing statute? No, I agree. It repeals the existing RCW Chapter 6329. But I don't believe that Lau states that it applies retroactively, especially when you compare, when you analyze it. I see. So you're saying that when Lau says such repealing statutes terminate all rights dependent upon the repealed statute, that's still terminate all rights prospectively. Yeah. And all proceedings based upon it. But that, in your opinion, that's still speaking to prospective proceedings, not existing proceedings that are currently. What I'm saying is Lau may say what he says, but I'm looking to the Hamilton case, Hamilton estate case. Oh, when you're saying Hamilton, I'm sorry, I was thinking Hamilton and I wasn't. Hamilton. I wasn't understanding Hamilton versus Hambolton. Sorry. That was my mistake, Your Honor. Yes. Hamilton makes clear that in order for a repeal of a statute to affect existing cases, it has to state that it is retroactive. It has to be retroactive. If not retroactive, it doesn't apply to existing cases. That's always been my understanding, too. I think I've got to go back and look at Nelson. I thought Nelson answered that question specific for Washington law. But as you point out, that might only be – it's ambiguous whether proceedings means future proceedings or proceedings that are already in existence. Right. And I wanted to – did I answer your question about this issue? I want to make sure I cover all the issues. I think so. I mean, I wanted – yeah, this has helped me. I wanted to also point out that the case Mr. Talmadge discussed, which was the one involving the retail installment sales contract, Kazanigi, which was one that you asked about, was that the – there was no – I just want to make sure that it's clear here, that there was no statement of retroactivity in that statute. And the trial court looked at that. And the court of appeals looked at that issue and said there's no statement of retroactivity. Therefore, it doesn't apply to the existing claims. But then the Supreme Court said, well, it is retroactive, even though it doesn't say it, but it's because this is a usury statute and usury statutes are presumed to operate retroactively. I think that's very important because it – Is that because of the penalty aspect of them? You know, it's just a long-term rule. I mean, as I was preparing the briefing and for oral argument, it doesn't really say why that is in the authority, but it goes back for decades and maybe a century or more. Usury statutes are simply presumed to operate retroactively, whether or not the statute says so or the legislation enacting it. And that's – there is no such application here for this repeal of 63-29-350. It's not presumed to operate retroactively. But if we decide this case before January 1st, your position is we don't need to delve into this? Well, maybe because it depends on when within the next 65 days that you decide it. Well, that is an issue because if our mandate comes down before January 1st, presumably we're done. But if they file a cert petition, does that keep it live? I don't think it does, first off, because – We don't have to worry about that. Yeah, I think it's – first off, I think it's not a retroactive statute, so it doesn't apply it anyway. And Hamilton says it has to be retroactive for it to apply. But Kazanigi, I wanted to clear that up because I don't remember Kazanigi having anything to do with the good faith defense. But did I respond to that part of your question? I just misheard your – the opening argument, but it's okay. Okay. All right. If we disagreed with you on the – on whether there is a good faith defense, is it your position we should decide that? Or do you agree that we should remand it? No, if you decide there's a good faith defense, that it applies? I think that the Ninth Circuit has the authority and the ability to affirm the district court on any basis. I think you're right, but we have a pretty consistent case law that says the normal course, where the district court hasn't weighed in on something, especially something so factually intertwined like that, we should remand it. The issue of whether, in fact, Mr. Heald, as manager of Ten Bridges, was operating in good faith when he interpreted this statute as they've characterized it, was well briefed in the district court. The district court never weighed in on it. No, but you – the argument still exists that – I'm not suggesting the argument isn't before us. My question is why should we exercise our discretion? Because, well, judicial economy, to save money for the parties. Frankly, Ten Bridges – again, another irony. Ten Bridges is saying that Madrona Lisa and Midas Mulligan were trying to put them out of business in the briefing, which is ironic when we – that my clients were the ones being sued in the federal court. They were just trying to protect their right to maintain property, and Ten Bridges kept on coming after them, motion after motion after motion in the state superior court, then the court of appeals, then the Supreme Court. If anybody's trying to put anybody out of business, Ten Bridges is trying to put my clients out of business. Now, so I – they've incurred, I mean, as you can imagine, an awful lot of money in attorney's fees throughout this entire litigation, some of which we hope to recover through Judge Robart's decision, but lots that we haven't. So that's one – that's two good reasons. Judicial economy, let's not make the parties wait another year. But what about – I mean, on the one hand, if we were to decide this issue, how should we view the district court's decision that – well, that they acted after the district court said what they did was against the law? Is that preclusive in your view? The superior court? Yeah, the superior court. Would the superior court's decision on August 8th be preclusive of Ten Bridges' actions on August 13th, or do we have to take into account the fact that that was still on appeal, and so they could still maintain that they were acting in good faith, even though the superior court had basically told them that it was unlawful? You know, I mean, that's certainly up to you, but by that time they – I mean, it's easier for us to reach the – if we said that the good faith defense applies, it seems like it would be a lot easier for us to say that they're not entitled to the good faith defense if all we were doing was saying that August 8th decision was preclusive of the issue. I'm not sure it is. I think it is. I think not only is the August 8th decision preclusive, I think also that the prior decision in the case that didn't involve Midas Mulligan or Madrona Lisa, the one that the estate attorney general had against the other entity that is not a party to this case, that paperwork was submitted to the court, and in that paperwork another trial court judge – What if they were able to get – is there a pending appeal over the superior court decision in the state court of appeals? What's going on with that? That case is all done. And so what – okay. So Gwandi and Asano were consolidated. The state court of appeals affirmed both superior court decisions. The Ten Bridges filed a motion for reconsideration. But the question is whether action in between – I mean, the action in between – what if they had gotten the superior court reversed? I understand that didn't happen here, but if they had gotten the superior court reversed, then – I mean, is that what we look to to say it's preclusive is because it was affirmed? We wouldn't have filed the – we wouldn't have asserted the counterclaim for violation of the WCPA if the court of appeals had – or the Supreme Court had reversed the state superior court. And that's – Mr. Talmadge says we were lying in the weeds or something. No, we were waiting for the state superior court to – the state appeals court to rule. Once the state appeals court ruled and affirmed the state superior courts, that gave us the go-ahead, as we explained to Judge Robart, to showing of good cause to assert the counterclaim. Because if – this illustrates the point. Because if the state superior court would have been reversed on appeal, and we don't have crystal balls to be able to know what that was, then there would have been no basis for a CPA counterclaim. Right. I was only asking the question for purposes of whether it's – whether the August 8 decision, superior court decision, was preclusive on the substance of the good faith. I think it is. Because by that point, there had been a judicial determination that what Tenbridges was doing was illegal and that it – But a non-final judicial opinion, in your view, is still preclusive of the good faith. It takes the knees out from under the argument that they were operating in good faith. Because by that point, they'd had a judicial decision that said it wasn't legal. I want to make sure I've covered everybody's questions because I might have left one in the dust. But I think I have covered everything. I want to just briefly touch on the issue of line gang. Line gang does not say the good faith defense applies to a per se claim. It absolutely does not. It's not stated anywhere in there. There's not a case in state-published decisions that says the per se – that says that the state – the good faith defense applies to a per se claim. And you, Your Honor, were astute in picking out footnote nine. Because footnote nine – the line – the Perry case is the case that established the good faith defense. The one that – I mean, before that, there was no – there was no such thing as a good faith defense based on a reasonable interpretation of existing law. Footnote nine makes clear in that case that if the – if it had been a per se violation of a statute, their outcome would have been different. That is – should be proof enough that the good faith defense does not apply unless it's to a per se situation. And – Isn't that dicta? Pardon? Isn't it dicta? But the – but as Judge Forrest indicated, the court has to – this court has to – or actually, I'm sorry, it was you, Your Honor. That the – this court has to determine whether the Washington State Supreme Court would agree with it. And based on that footnote, it certainly would. But under Washington law, dicta is not binding, unlike in the Ninth Circuit. But Hangman Ridge is not dicta. Hangman Ridge is good law. And Hangman Ridge, it makes it clear that when the legislature states that something is a per se, unfair or deceptive act in trade or commerce, that – that the legislature has to apply it. At 786 in Hangman, Hangman Ridge, the Supreme Court said, a per se trade practice exists when a statute has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce has been violated. Okay, that's just this. It is. It is what it is. An unfair or deceptive act or trade in practice is – if the statute says it is, it is. And the – then it goes on to say, the legislature, not this court, is the appropriate body to establish that interaction by declaring a statutory violation to be a per se unfair trade practice where the legislature specifically defines the exact relationship between a statute and the CPA. This court will acknowledge that relationship. Right there, the court is saying that if the legislature says this is an unfair or deceptive act in trade or practice, that's a legislative enactment. Under the Washington State Constitution, the judicial branch cannot intercede and apply this judicially created good faith defense to a CPA claim. Okay, counsel. We have your argument. Your time has expired. So, your honors, we ask that you affirm the district court in all respects and award Majorana Lisa its attorney's visa for appeal. Thank you very much. Thank you, counsel. We've got time for rebuttal. Thank you, your honor. Do I get an additional bit because he went over time? Go ahead. Thank you, your honor. What you heard was a remarkable quantum of gobbledygook. First, in response to Judge Sung's question about a per se violation of the Consumer Protection Act, he admitted that you can have a per se violation of the Consumer Protection Act in the insurance context under CALIVIC and case after case after case applies the good faith defense in the insurance context, most specifically Mulcahy. The court need look no farther than the analysis that the court gave of the per se cause of action there to realize that the good faith defense applies in a per se claim under Washington law. So you've got that. He didn't answer that question very clearly, but he did concede that CALIVIC does in fact stand for the proposition that it is a per se violation of the Consumer Protection Act. Then with respect to good faith in response to your questions, Judge Nelson, I mean he stood up here and said they waited to act on their compulsory counterclaim, their compulsory counterclaim until the appeal court ruled, and yet argued that the trial court's decision was preclusive as to the good faith of 10 Bridges. That's the irony that I pointed out initially in my argument. They can't have it both ways. They can't talk out of one side of their mouth and say, oh, we can't act on a compulsory counterclaim obligation to seek an amendment of the case schedule and to seek an amendment of our pleading because we don't know about the status of the law. This argument just goes to your position is if we say the good faith applies, we should remand it because there isn't a preclusive effect. There's no preclusive effect, and my point is they're arguing out of both sides of their mouth in this regard. And lastly, with respect to the retroactivity issue, Washington law doesn't simply require the legislature to say a statute is retroactive or not. You can have a statute apply retroactively as the Hambleton case notes, as Judge Forrest cited to us, that in fact you can have this in circumstances where the activity of the legislature is remedial or curative. And this was a curative act on the part of the legislature and remedial as well. The Unclaimed Property Act is remedial, but it cured a defect in Washington law. It repealed the Gwondi case, an outlier. It did not save that. It was a curative enactment that is retroactively applied, and the Kazanighi case makes it clear that it applies retroactively to all causes of action that arose prior to the effective date of the statute, even when there's a specific effective date of the statute. Kazanighi controls. We ask the court to basically reverse the district court and vacate the CPA claim that they've asserted here. Thank you. Thank you to both counsel for your arguments today. The case is now submitted, and that concludes our arguments for the week. All rise.
judges: NELSON, FORREST, SUNG